IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ESVIN GOMEZ., <br><br> Plaintiff, <br><br> v. <br><br> SEOUL GOOL DAE GEE INC, <br><br> Defendant. | Case No. 1:19-cv-01121-CMH-TCB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

The Plaintiff in this matter, through undersigned counsel, for his successful prosecution of this Fair Labor Standards Act ("FLSA") case. He submits this Memorandum and the accompanying supporting exhibits (which include counsel's detailed time entries for their work on this case) in support of that Motion.

As set out in detail in the accompanying declarations, Plaintiff seeks attorneys' fees of $13,429.59 and costs of $400. Plaintiff's Motion is made pursuant to the FLSA's mandatory fee shifting provision and Federal Rule of Civil Procedure 54(d)(2).

**I.    BACKGROUND**

This case arose from Defendant's' failure to pay overtime due to Plaintiff. Defendant operates a Korean restaurant known as Honey Pig Korean BBQ and employed Plaintiff at that restaurant for several years. Plaintiff, an individual of limited economic means who does not speak

English, worked for Defendant Honey Pig[1] for approximately five years as a waiter's assistant, busboy, and janitor. This matter has now been resolved adversely to Defendant, with a judgment against Defendant having been entered pursuant to Plaintiff's acceptance of Defendant's offer of judgment which. The only remaining issue to be resolved is what fees should be awarded to Plaintiff's counsel.

Although this case was resolved relatively quickly after the filing of Plaintiff's Complaint, it nevertheless involved significant informal discovery and substantial legal work, much of which occurred prior to the filing of this case as the Parties attempted, ultimately unsuccessfully, to settle their dispute without judicial intervention. Accompanying Declaration of Matthew B. Kaplan ¶ 11. Prior to entry of judgment against it, Defendant consistently took the position that it had complied with its overtime obligations, owed nothing to Defendant Gomez and would vigorously defend itself in court. *Id.*

Plaintiff reached out to Defendant's prior counsel in April 2019 to discuss Plaintiff's claims and a possible resolution of this matter. *Id.* ¶ 12. Specifically, counsel requested that Seoul Gool Dae Gee provide detailed time and payment records covering the 3+-year period that Plaintiff Gomez worked for Defendant so that counsel could analyze this information to confirm that overtime violations had occurred and to quantify the damages resulting from any such violation. Defendant agreed in principal. *Id.* But actually obtaining all records needed and available, formatted in a manner usable to Gomez' counsel took time and required back and forth between counsel for the Parties. *Id.* Ultimately Seoul Gool Dae Gee produced during this informal discovery process some 240 pages of "paper" records plus Excel spreadsheeted formatted data.

---

[1] Defendant Seoul Gool Dae Gee is sometimes referred to as "Honey Pig," the name of the business it operates, in this filing.

Much of this data purported to reflect, over a period of several years, Honey Pig's records with respect to the hours Gomez actually worked and what he was paid for those hours. *Id.*

Upon initial review, Defendant's records seemed to indicate that there had been no overtime violations. Indeed, according to pay records provided, Gomez was actually paid for more overtime hours than he actually worked. *Id.* ¶ 14. However, Plaintiff's counsel's paralegal, with supervision from and input by attorney Kaplan, used the provided data to construct a 78-page spreadsheet model indicating the hours worked, including separate totals of overtime and non-overtime hours, from April 2016 through the end of Gomez's employment in March 2019. *Id.* The spreadsheet also set out Plaintiff's counsel's view of the amount it believed that Gomez had been underpaid. *Id.* Specifically, Plaintiff took the position that the spreadsheet indicted that Plaintiff had been underpaid overtime totaling $13,554.92.[2] *Id.*

Gomez' counsel's theory, based on their detailed analysis of they pay records, was that, despite the contrary indication in the pay records, Gomez had actually not been paid on an hourly basis, but on a salary, a practice not permissible under federal law. *Id.* 14. Honey Pig disputed this premise, contending that Gomez had not been underpaid at all and, consequently, was owed nothing. *Id.*

Although Plaintiff's counsel believes that their methodology for calculating Plaintiff's unpaid overtime damages was reasonable, these calculations involved certain assumptions favorable to Plaintiff. *Id.* 15. Consequently, even if this matter had been litigated, and the Court ultimately agreed with Plaintiff's premise that he was improperly paid on an hourly basis, Defendant would likely have challenged Plaintiff's damages methodology and it is by no means

---

[2] Initially, Plaintiff's calculation had produced a higher damages number, but that was the result of a mathematical error which was promptly corrected after counsel for Honey Pig pointed this mistake out to counsel for Plaintiff.

3

certain that counsel's calculations would have been accepted as a proper measure of damages. Additionally, counsel's calculations assumed a three-year FLSA statute of limitations. While FLSA claims can go back three years if a defendant has willfully violated the law, Defendants would have surely argued that that was not the case here because they had not acted in bad faith and that that the Court should apply the FLSA's default two-year limitations period. Consequently, if damages were awarded, those damages might well have been significantly less than the amount sought.

In mid-June the Parties began engaging in in settlement discussions. *Id.* ¶ 16. These discussions, however, were delayed because in early July Honey Pig changed its attorneys and new counsel understandably needed some time to become familiar with this matter. *Id.*

Ultimately, settlement discussions were not fruitful and Plaintiff filed his Complaint on August 24, 2019. On October 1, 2019 Honey Pigged served on Gomez an offer of judgment which provided that Honey Pig consented to entry of judgment against it for $6,500 in damages to Plaintiff plus "reasonable attorneys fees and costs incurred as of the date of this offer, as determined by the Court." Honey Pig filed the offer with the Court on October 9, 2019. The Court entered judgment on October 24, 2019.

At the beginning of his attorneys' involvement in this case Plaintiff Gomez made clear that one of the overriding objectives was that his case should be resolved expeditiously, and by no later than the fall of this year if at all possible. *Id.* ¶ 17. This was because, Gomez, who is not a U.S. citizen, intended to return to his home country toward the end of this year and he did not want to have to return to the U.S. to continue the prosecution of this case, given the time and expense of doing so. *Id.* Moreover, even if Gomez had wanted to return home, most citizens of his country are unable to obtain a U.S. visa, which is required for them to travel to this country. *Id.* Although, Gomez indicated that he would likely stay longer in the United States if absolutely necessary for

4

the prosecution of this matter, he had compelling family reasons, including a seriously ill close relative, to return home expeditiously. Ultimately, Gomez' decision to accept the offer of judgment was heavily influenced by this desire to return to his home country. *Id.* [3]

## II. ARGUMENT

### A. Overview of Argument

This was a good resolution of this case for Plaintiff. He was able to obtain a meaningful recovery because of the skill and hard work of his attorneys. The judgment ultimately entered reasonably valued this matter, given the very real possibility that Plaintiff might not be able to prove liability or even if he did, that damages might be much less than what he hoped to prove. Additionally, Plaintiff had a personal need to resolve this case promptly so that he could return to his home country, even if a quick resolution reduced his recovery. Furthermore, any analysis of the appropriateness of Plaintiffs recovery needs to take into account the possibility that, given Defendant's offer of judgment, if this case had been litigated to trial Plaintiff might actually have ended up owing money to Defendant even if he prevailed.

Plaintiff's counsel litigated this case, which many attorneys would have found to be economically unattractive, on an entirely contingent basis. They now seek an award of attorneys' fees and costs pursuant to the FLSA, which provides that, if a plaintiff's claim is successful, the court "***shall***, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). They should be awarded the full amount of fees now requested.

---

[3] This disclosure relating to Mr. Gomez' personal circumstances is being made with Gomez' permission. *Id.* For obvious reasons, Gomez' attorneys did not advise opposing counsel of this circumstance prior to entry of judgment.

### B. Plaintiff's Fee Request is Reasonable

"The payment of attorney's fees to employees prevailing in FLSA cases is mandatory. 29 U.S.C. § 216(b)." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984). The amount of the attorneys' fees, however, is within the sound discretion of the trial court. *See Van Dyke v. Bluefield Gas Co.*, 210 F.2d 620, 622 (4th Cir. 1954). In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court provided the framework for deciding the merits of fee petitions.

According to *Hensley*, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This lodestar "calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.*; *see also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (there is a "strong presumption" that the lodestar represents the reasonable fee). The district court may, of course, reduce the award for inadequate documentation of hours or for hours not "reasonably expended" due to overstaffing or inexperience. 461 U.S. at 434. As in private practice "[h]ours that are not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority." *Id*. Expenses incurred for paralegal/legal assistant services are also encompassed by, and thus are recoverable as, "attorney's fees." *See Missouri v. Jenkins*, 491 U.S. 274, 288-89 (1989) ("A reasonable attorney's fee" refers to an attorney's work product, and thus, must account for the work, not only of attorneys, but also the work of paralegals.).

In this circuit, a court requested to award fees determines the requesting party's

> "lodestar figure," i.e., the reasonable hourly rate times the number of hours reasonably expended, in light of the twelve factors set forth in *Barber v. Kimbrell's*, *Inc.*, 577 F.2d 216 (4th Cir. 1978). Those factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity

6

>costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.
>
>The Court need not address all twelve *Kimbrell's* factors independently because such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.

*Wells Fargo Bank, N.A. v. Walls*, No. 1:12-cv-664, 2013 U.S. Dist. LEXIS 57415, *5-7 (E.D. Va. Mar. 4, 2013) (citations, quotations, brackets and footnote omitted).

Each of these *Kimbrell* factors are discussed below:

### 1.  The Time and Labor Required

In computing the reasonable hours expended, the fee applicant should reference contemporaneous time and expense records. *See Webb v. Bd. of Educ.*, 471 U.S. 234, 238 n.6 (1985). Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice is ethically obligated to exclude such hours from her fee submission. *Hensley*, 461 U.S. at 434. An appraisal that time spent was "not reasonably necessary" to the litigation "turns on so many subjective factors that it seldom should be the basis for reduction of an attorney's fee." *Jacquette v. Black Hawk County*, 710 F.2d 455, 460-62 (8th Cir. 1983).

The time and expense billing entries for this case are attached to Plaintiff counsel Kaplan's accompanying Declaration. Plaintiffs' counsel recorded billing entries contemporaneously and their billing statements identify the amount of time expended, the tasks performed, and the costs

incurred. Kaplan Decl. ¶ 2; accompany Decl. of Lenore Garon ¶ 2. Counsel is not billing for excessive or unnecessary hours for work performed, as well as any other hours which it is not necessary to bill for. Kaplan Decl. ¶ 2. Garon Decl. ¶ 2. Counsel carefully coordinated their efforts during the course of this litigation and worked to avoid billing for any duplicative work. Kaplan Decl. ¶ 2.

In short, the fees now submitted by Plaintiff' counsel are those that they believe were fair and reasonably necessary to the litigation after making a good-faith evaluation of all recorded hours of work performed in relation to Plaintiff' case. The total amount of hours expended in the prosecution of Plaintiff' claims for which counsel is now seeking payment, including paralegal hours, is 36.3 hours. This expenditure of time was reasonable.

### 2.     The Novelty and Difficulty of the Questions Raised

Although this was not a case of extraordinary complexity, it required the attorneys involved to apply their expert knowledge of FLSA-related law. Most notably, it required Plaintiff's counsel to develop a theory of the case, after careful analysis of the relevant voluminous time worked and wage payment records, based on the premise that Plaintiff had been paid on a salaried rather than an hourly basis. If counsel had simply taken Defendant's records at face value, Plaintiff would have recovered nothing.

### 3.     The Skill Requisite to Perform the Legal Services Properly

Plaintiffs' counsel executed the litigation of Plaintiffs' case with expertise and efficiency. As set out in their Declarations, both attorneys who have worked on this case have extensive experience in litigating in federal courts and in employment matters. Kaplan Decl. ¶ 10. Garon Decl. ¶¶ 3-11. This expertise facilitated their ability to develop their theory that Plaintiff was unlawfully paid on a salaried basis although Defendants' records purportedly indicated otherwise.

Moreover, it was counsel's considerable experience in FLSA cases which equipped them to construct a complex spreadsheet model that was capable of reasonably calculating Plaintiff's damages. Additionally, counsel's decision to reach to the Defendant prior to litigating ultimately allowed this matter to be resolved soon after the Complaint was filed, greatly reducing the attorney time (and judicial resources) that would otherwise have been devoted to this case.

### 4. The Preclusion of Employment by the Attorney Due to Acceptance of the Case

The Kaplan Law Firm has a busy practice with a full workload. Kaplan Decl. ¶ 21. As Mr. Kaplan is a solo practitioner the considerable time devoted to this case, for which he has received no compensation, means that he has forgone substantial opportunities to perform other profitable work. *Id.* Attorney Garon also has a full plate of legal work and the time spent on this case could not be devoted to other legal matter. Garon Decl. ¶ 13.

### 5. The Customary Fee

Under fee-shifting statutes such as the FLSA the hourly rate component of the lodestar is determined with reference to the reasonable hourly rates in the legal community where the case is litigated. The rate used to calculate the fees of Plaintiffs legal professionals in this case are reasonable: $495 per hour for Mr. Kaplan, $460 per hour, for Ms. Garon, and $135 for paralegal time.

Some eight years ago, in *Vienna Metro, LLC v. Pulte Home Corporation*, No. 1:10-cv-00502 (E.D. Va. Aug. 24, 2011), this Court found acceptable as reasonable hourly rates in this community in 2011 the following ranges for the following experience levels:

   a. 8 – 10 years of experience: $465 – 640
   b. 11 – 19 years of experience: $520 – 770

    c. 20+ years of experience: $505 – 820

*See also Taylor v. Republic Servs.*, No. 1:12-cv-00523, 2014 U.S. Dist. LEXIS 11086, at *14 (E.D. Va. Jan. 29, 2014) (reproducing chart of *Vienna Metro* rates and noting that they were prepared by "an expert on legal fees in Northern Virginia,"). The *Vienna Metro* rate for paralegals is $130-350. *Id.*

Courts in this district continue to rely on the *Vienna Metro* matrix. *See, e.g., Taylor*, 2014 U.S. Dist. LEXIS 11086; *Alvarez v. Readyclean Indus. Servs.*, No. 1:14cv490, 2015 U.S. Dist. LEXIS 134144, at *8 (E.D. Va. Aug. 26, 2015*) report and recommendation adopted*, 2015 U.S. Dist. LEXIS 132577 (E.D. Va. Sep. 29, 2015). In *JK Moving & Storage, Inc. v. Winmar Constr., Inc.*, No. 1:17-CV-1213, 2018 WL 5985678, at *2 (E.D. Va. Nov. 13, 2018) (Hilton, J.), this Court approved a fee award over a defendant's objection, pointing out that "all of the hourly rates charged by Plaintiff's litigation team are within or below the amounts deemed reasonable by the *Vienna Metro* matrix."

The hourly rates proposed by Plaintiff's counsel in this case are lower than the rates approved in *Vienna Metro*. Mr. Kaplan, who has practiced law for approximately sixteen years, seeks $495 per hour, not the $520-770 rate that *Vienna Metro* suggests he would have been entitled to at the time *Vienna Metro* was decided. Ms. Garon seeks $460 per hours, not the $505-820 that *Vienna Metro* indicates that she would be entitled to. Moreover, Tom Spiggle, a respected and experienced member of the bar of this court knowledgeable about the prevailing hourly rates in this division of the Eastern District of Virginia, has provided a declaration which accompanies this Memorandum. Mr. Spiggle testifies that the rates sought by counsel are reasonable for attorneys in Northern Virginia in this type of case. A similar Declaration with respect to the reasonableness of Ms. Garon's rate by attorney Nina Yuanyuan Ren also accompanies this Memorandum.

Also relevant is the fact that, with respect to wage and hour claims brought under District of Columbia law, Plaintiff's attorneys are entitled by District of Columbia law to fee awards based on the "matrix approved in *Salazar v. District of Columbia*, 123 F.Supp.2d 8 (D.D.C. 2000), and updated to account for the current market hourly rates for attorney's services." D.C. Code § 32–1308 (b)(1). Attorney Kaplan's *Salazar* rate is $747 per hour and Attorney Garon's rate is $899 per hour. *See* http://www.laffeymatrix.com/see.html. Of course, this D.C. law is not applicable to federal litigation in Virginia. But both Kaplan and Garon are members of the District of Columbia bar and a substantial portion of Kaplan's practice consists of wage and hour work under that D.C. legislation and he has actually been awarded fees at the *Salazar* rate for such work in that jurisdiction. Kaplan Decl. ¶ 10. The fact that counsel in this case (and other attorneys) receive *Salazar* rates for very similar litigation in a neighboring jurisdiction where they are qualified to practice weighs in favor of finding that the significantly lower rates that they are requesting in this case are reasonable.[4]

As it happens, the fees now requested are greater than the judgment in favor of Plaintiff personally. But this is entirely appropriate in FLSA cases where the work by plaintiff's attorneys was reasonably necessary, as was the case here. Given the cost of federal litigation, any other rule would make it difficult or impossible for plaintiffs such as Mr. Gomez to obtain competent legal counsel. *Benitez v. Braga Const. Co*., No. 1:11-CV-461, 2011 WL 5122686, at *1 (E.D. Va. Sept. 19, 2011) (Hilton, J.) (affirming 2011 WL 5122686 (E.D. Va. Sept. 19, 2011) (report and

---

[4] Another widely used attorney rate benchmark for litigation in the Washington D.C. area is the Laffey Matrix prepared by the Department of Justice. Under the most recent available version of that Matrix (which has not been updated for 2019-20 and which has been retitled the "USAO Attorney's Fees Matrix"), Kaplan is entitled to a rate of $544, Garon is entitled to a rate of $613, and paralegals are entitled to a rate of $166.00. The Matrix is available at https://www.justice.gov/usao-dc/file/796471/download.

recommendation)) is instructive. In that FLSA case this Court awarded a total of $9,092.50 in FLSA damages in favor of three plaintiffs and against a defendant who had defaulted for failure to appear in the case. Subsequently, this court awarded Plaintiff's attorneys' fees of $19,180 and costs of $423.96. Order, No. 1:11-CV-461, Dkt. 19 at 4 (Oct 24, 2011).

### 6. Whether the Fee is Fixed or Contingent

Counsel agreed to accept Plaintiffs case on a fully contingent basis and have paid all Plaintiff's costs up front. Kaplan Decl. ¶ 22. If this case had been unsuccessful, they would have recovered no fees or reimbursement for any of the costs of litigation that they advanced. Counsel will receive no compensation for this matter other than that awarded by the Court. *Id.* Any fees and costs awarded by the Court will be paid only to the undersigned attorneys and to no other person. *Id.*

### 7. Time Limitations Imposed by the Client or the Circumstances

Given Plaintiff's desire to leave the United States, Plaintiffs' counsel was obligated to move this case forward expeditiously.

### 8. The Results Obtained

Attorneys for Plaintiff achieved an excellent result for their client given the circumstances. Of course, it was possible that Plaintiff could have obtained a larger recover had this matter gone to trial.[5] But Defendant indicated that it would vigorously litigate this matter. And Defendant had

---

[5] And any damages awarded to Plaintiff might have been doubled pursuant to the FLSA's liquidated damages provision. But liquidated damage need not be awarded if a court determines that "that the act or omission giving rise to such action was in good faith and that [the defendant] had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260. Given that Plaintiff was paid a substantial amount for

reasonable defenses that the Court and a jury might have deemed compelling—their pay records, for example, showed that Defendant was supposedly owed nothing. There was a real possibility that the Court or a jury might have awarded Plaintiff less than he is now recovering or reject Plaintiff's theory of liability entirely, resulting in Plaintiff recovering nothing. Moreover, a zero recovery was not the worst possible outcome. If Plaintiff had recovered less than the amount set out in the offer of judgment, he would have been liable for Defendant' costs, which could well have totaled several thousand dollars if this case were tried to a verdict, especially given the likely need to employee interpreters to testimony, a taxable cost.

Additionally, in measuring the reasonableness of the settlement, the court should consider that Plaintiff's objective was not merely to maximize his economic recovery, but to resolve this case expeditiously so that he could return to his home country as he planned to do.

### 9. The Experience, Reputation, and Ability of the Attorneys

Mr. Kaplan has approximately sixteen years of experience in practicing law. He has worked for two major national law firms, White & Case LLP and Cohen Milstein Sellers & Toll PLLC, and much of his work has been focused on complex plaintiff-side litigation in federal courts throughout the country. Kaplan Decl. ¶¶ 5-10. He has particularly extensive experience with wage and hour cases. *Id.* Prior to becoming an attorney he worked as an analyst for the Central Intelligence Agency and as a Foreign Service Officer for the Department of State. *Id.*

---

his work, and was in fact overpaid according to the manner in which defendants mistakenly calculated his pay, Defendant might well have had a reasonable argument that it had not acted in bad faith and that, consequently, no liquidated damages should be awarded.

Ms. Garon has been practicing law since for over four decades and is a former trial attorney with the U.S. Department of Justice and the Federal Trade Commission. Garon Decl. ¶¶ 3-11. She has extensive experience in federal litigation, including employment litigation. *Id.*

### 10.   The Undesirability of Plaintiff's Case

This was an undesirable case. The amounts involved were relatively small by the standards of federal litigation, the fact that Plaintiff does not speak English would have caused many attorneys to decline to represent him, and Plaintiff's plans to return to his home country meant that any attorney representing him might face the prospect that nothing would be recovered, regardless of the merits of Plaintiff's case.

Additionally, the possibility that this case might end in an offer of judgment, as actually occurred, also made this case unattractive. Such offers are often worded—as was the offer in this case—so as to cut off a fee award after the offer is accepted. Consequently, potential counsel contemplating taking this case would have been aware that they might need to do what counsel must do in this case: perform significant uncompensated work to recover any fee at all.

### 11.   The Nature and Length of The Professional Relationship with Plaintiff

Clients in wage and hour matters tend to be one-case clients—typically such clients, like Plaintiff, only suffer actionable injury once. Accordingly, counsel do not expect that they will perform any more work on Plaintiff's behalf. This is especially so as Plaintiff will be departing the United Sates.

### 12.   Attorneys' Fee Awards in Similar Cases

As discussed in detail above, Plaintiff's rates are reasonable and are comparable to those of other civil litigations in employment related cases before this court.

14

### C. Plaintiff's Costs Are Reasonable

The only costs sought by Plaintiff is his $400 filing fee. This request is reasonable.

## III. <u>CONCLUSION</u>

The Court should award the requested fees and costs.

Dated: November 7, 2019

                            Respectfully submitted,

                            By     /s/Matthew B. Kaplan
                            Matthew B. Kaplan
                            VSB No. 51027
                            The Kaplan Law Firm
                            509 N. Jefferson St.
                            Arlington, VA 22205
                            Telephone: (703) 665-9529
                            Fax: (888) 958-1366
                            Email: mbkaplan@thekaplanlawfirm.com
                            *Counsel for Plaintiffs*

                            Lenore C. Garon
                            VSB No. 39934
                            Law Office of Lenore C. Garon, PLLC
                            2412 Falls Place Court
                            Falls Church, VA 22043
                            Telephone: (703) 534-6662
                            Email: lenore@lenorecgaron.com
                            *Counsel for Plaintiffs*

**Certificate of Service**

I hereby certify that, on the date indicated below, the foregoing document (and any attachments or accompanying documents) was served via the Court's CM/ECF System on counsel for all parties who have appeared in this matter.

   /s/ Matthew B. Kaplan
Matthew B. Kaplan

Dated: November 7, 2019