IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ESVIN GOMEZ,<br><br>PLAINTIFF,<br><br>V.<br><br>SEOUL GOOL DAE GEE INC.,<br><br>DEFENDANT. | NO.  _1:19-cv-01121-CMH-TCB |

**Declaration of Matthew B. Kaplan**

1. I am a solo practitioner and the principal attorney of The Kaplan Law Firm.  Except where otherwise indicated, I make this Declaration based on my personal knowledge.

Billing Procedures

2. The amounts that my firm claims for attorneys' fees and for expenses, as well as the number of hours worked on this matter, and similar information for my cocounsel are set out in the charts attached as an Attachment to this Declaration.  I believe that the fees and expenses associated with my firm and my cocounsel's firm are reasonable and were reasonably necessary for the prosecution of this case.  The data for my firm in this Attachment is taken from my firm's books and records and is an accurate reflection of those records.  I generally record time as it is incurred using an application on my iPhone.  This data is then transferred to my firm's permanent record of attorney time.  I often record less time than I actually worked if I believe that, in the exercise of billing discretion, I should do so.  I also subject my time entries, including my time entries in this case, to further review and my practice is to not bill for time that I do not believe should be billed to a conventionally billed client, including if the recorded time might be deemed repetitive, unnecessary or entirely clerical.  I coordinated my efforts with that of cocounsel to avoid duplication.

Background and Experience

3. A true and accurate copy of my resume is attached as an Attachment to this Declaration.

4. I am asking the Court to approve a billing rate in this matter for myself of $495 per hour, which, given my background and experience, I believe is reasonable and reflective of the market rate in this district for matters of this type.

5. From 1987 – 1988 I was employed as an analyst at the Central Intelligence Agency and from 1988 – 2003 I was employed as a Foreign Service Officer with the United States Department of State. My duties focused on writing, analysis and negotiation, and I believe that my work at these two agencies provided me with skills that substantially enhance my ability to represent clients.

6. I attended the George Washington University Law School at night, while continuing to work at the State Department during the day and was graduated with Highest Honors (top 3% of my class) in January 2003, receiving an award for having the highest grade point average for the class of 2003 evening division. While in law school I served as a volunteer with the U.S. Public Defender's Office for the Eastern District of Virginia. I was admitted to the Virginia bar in April 2003 and have been practicing law in the private sector ever since.

7. From 2003 to 2005 I was employed as an attorney by White & Case, LLP, a respected global law firm. At White & Case I worked on complex civil litigation in the federal courts.

8. From 2005 to 2012 I was employed as an attorney at Cohen Milstein Sellers & Toll, PLLC, one of the nation's largest and most respected class action firms. I specialized in securities class actions and practiced in courts around the country, including in the Eastern District of Virginia. My hourly rate at Cohen Milstein, prior to my April 2012 resignation on good terms from that firm, was $495 per hour. It is Cohen Milstein's practice to increase its attorneys' rates each December. The rates set by Cohen Milstein for its attorneys were frequently submitted in fee petitions to federal courts and, to the best of my knowledge, were never found to be unreasonable.

9. During my time at White and Case and Cohen Milstein I was the principal attorney responsible for two complex and lengthy pro bono unpaid wages/FLSA cases. Ultimately, in both case I obtained a substantial recovery for the clients.

10. Since leaving Cohen Milstein I have developed a solo practice, which focuses, in significant part, on FLSA claims and I have developed substantial expertise in that area. My knowledge of federal practice and procedure, including with respect to class actions, has proven to be highly relevant to the prosecutions of FLSA claims, both when prosecuted individually or as collective actions. Much of my current litigation caseload involves plaintiff-side wage and hour claims in the District of Columbia under District of Columbia law, which is in many respects similar to the federal Fair Labor Standards act (albeit with a higher level of liquidated damages). By D.C. law I am entitled to "Salazar" rates and I have actually been awarded fees at those rates.

Circumstances of this Case

11. Although this case was resolved relatively quickly after the filing of Plaintiff's Complaint, it nevertheless involved significant informal discovery and substantial legal work, much of which occurred prior to the filing of this case as the Parties attempted, ultimately unsuccessfully, to settle their dispute without judicial intervention. Prior to entry of judgment against it, Defendant consistently took the position that it had complied with its overtime obligations, owed nothing to Defendant Gomez and would vigorously defend itself in court.

12.     Plaintiff reached out to Defendant's prior counsel in April 2019 to discuss Plaintiff's claims and a possible resolution of this matter.  Specifically, counsel requested that Seoul Gool Dae Gee provide detailed time and payment records covering the year period that Plaintiff Gomez worked for Defendant so that counsel could analyze this information to confirm that overtime violations had occurred and to quantify the damages resulting from any such violation.  Defendant agreed in principal.  But actually obtaining all records needed and available, formatted in a manner usable to Gomez' counsel took time and required back and forth between counsel for the Parties.  Ultimately Seoul Gool Dae Gee produced during this informal discovery process some 240 pages of "paper" records plus Excel spreadsheeted formatted data.  Much of this data purported to reflect, over a period of several years, Honey Pig's records with respect to the hours Gomez actually worked and what he was paid for those hours.

13.     Upon initial review, Defendant's records seemed to indicate that there had been no overtime violations.  Indeed, according to pay records provided, Gomez was actually paid for more overtime hours than he actually worked.  However, Plaintiff's counsel's paralegal, with supervision from and input by, attorney Kaplan, used the provided data to construct a 78-page spreadsheet model indicating the hours worked, including separate totals of overtime and non-overtime hours, from April 2016 through the end of Gomez's employment in March 2019.  The spreadsheet also set out Plaintiff's counsel's view of the amount it believed that Gomez had been underpaid.  Specifically, Plaintiff took the position that the spreadsheet indicted that Plaintiff had been underpaid overtime totaling $13,554.92.

14.     Gomez' counsel's theory, based on their detailed analysis of they pay records, was that, despite the contrary indication in the pay records, Gomez had actually not been paid on an hourly basis, but on a salary, a practice not permissible under federal law.  Honey Pig disputed this premise, contending that Gomez had not been underpaid at all and, consequently, was owed nothing.

15.     Although Plaintiff's counsel believes that their methodology for calculating Plaintiff's unpaid overtime damages was reasonable, these calculations involved certain assumptions favorable to Plaintiff.

16.     In mid-June the Parties began engaging in in settlement discussions.  These discussions, however, were delayed because in early July Honey Pig changed its attorneys and new counsel understandably needed some time to become familiar with this matter.

17.     At the beginning of his attorneys' involvement in this case Plaintiff Gomez made clear that one of the overriding objectives was that his case should be resolved expeditiously, and by no later than the fall of this year if at all possible.  This was because, Gomez, who is not a U.S. citizen, intended to return to his home country toward the end of this year and he did not want to have to return to the U.S. to continue the prosecution of this case, especially since doing so would have been time consuming and might have greatly diminished the effective value of any recovery in this case. Moreover, even if Gomez had wanted to return to the U.S., most citizens of his country are unable to obtain a U.S. visa, which is required for them to travel to this country.  Although, Gomez indicated that he would likely stay longer in the United States if absolutely necessary for the prosecution of this matter, he had compelling family reasons, including an ill elderly close relative in his home country, to return home expeditiously.

Ultimately, Gomez' decision to accept the offer of judgment was heavily influenced by this desire to return to his home country. Gomez has authorized his attorneys to disclose this information.

Fees and Expenses

18. I have attached to this declaration true and accurate tables indicating in detail my firm's fees and expenses in this matter. I normally bill my clients for my Westlaw legal research expenses, as I have done here in the same manner as I bill these expenses to non-contingent clients.

19. I believe that this expenditure of time and expenses was appropriate and reasonable under the circumstances of this case. The work billed includes preliminary communications with my client, factual research and initial damage calculations, communicating with Defendant in an effort to negotiate a pre-litigation settlement and drafting a Complaint after conducting appropriate research.

Rates

20. I believe that the rate I have requested, $495 per hour, is reasonable and is consistent with the market rate for the type of legal services I performed in this case. I believe that the rate being requested by my co-counsel, Lenore Garon, $460 per hour, is also reasonable.

Other issues

21. I am a solo practitioner with a very busy practice with a full workload. If I had not been working on this matter, I would have devoted comparable time to work on other matters and I expect that I would have been paid for my time working on those other matters.

22. My and my cocounsel's work on this mater was entirely contingent. Neither of us has received any payment for any of our work or reimbursement for any of our expenses. If this case had been unsuccessful, we would not have received any payment related to this case. Any fees and expenses awarded by the Court will be paid only to myself and my (through our respective solo practitioner firms) cocounsel and to no other person.

I declare under penalty of perjury that the foregoing is true and correct.

    /s/Matthew B. Kaplan
    Matthew B. Kaplan

Executed on November 7, 2019

# EXHIBIT 1

**Plaintiff's Counsel's Charts of Fees and Expenses**

## Plaintiff's Total Fees & Expenses
## Honey Pig Matter

| Fees | $ | 13,429.59 |
|---|---|---|
| Expenses | $ | 400.00 |
| Total | $ | 13,829.59 |

## Honey Pig Matter - Plaintiff's Attorneys' Fees

| Total Fees | $ 13,429.59 |
|---|---|
| Total Hours | 36.333 |

| Sort Number | Date | Category | Matter Name | Employee | Rate/Hr | Hours | Fees Earned | Notes |
|---|---|---|---|---|---|---|---|---|
| 13070 | 3/22/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.367 | $ 181.67 | Initial telcon with client |
| 13077 | 3/25/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.15 | $ 74.25 | Speak with client, arrange for initial meeting |
| 13080 | 3/25/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.1 | $ 49.50 | Prepare engagement letter |
| 13088 | 3/26/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 1.717 | $ 849.92 | Initial meeting with client record notes of conversation |
| 13106 | 3/28/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.6 | $ 297.00 | Review documents from client; correspondence to client |
| 13108 | 3/28/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.233 | $ 115.34 | Review substantive docs. Related discussion with Lenore Garon. |
| 13115 | 3/29/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.433 | $ 214.34 | Speak to the client about status of the case; review documents from the client |
| 13120 | 3/30/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.617 | $ 305.42 | Communicate with client. Detailed telcon re status of his case |
| 13139 | 4/2/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.183 | $ 90.59 | Review draft letter to honey pig |
| 13166 | 4/5/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.183 | $ 90.59 | Review draft tolling agreement |
| 14381 | 4/5/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.2 | $ 92.00 | Telephone conference with counsel for proposed defendant, followed by telephone conference with MBK, re tolling agreement |
| 14382 | 4/5/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.2 | $ 92.00 | Drafting tolling agreement and emailing it to MBK |
| 13175 | 4/7/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.2 | $ 99.00 | Speak to client. Record notes of conversation |
| 14383 | 4/8/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.2 | $ 92.00 | Revising tolling agreement and sending it to employer's counsel |
| 14384 | 4/15/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.1 | $ 46.00 | Response to email from restaurant's counsel. |

| Sort Number | Date | Category | Matter Name | Employee | Rate/Hr | Hours | Fees Earned | Notes |
|---|---|---|---|---|---|---|---|---|
| 13284 | 4/25/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.1 | $ 49.50 | Review status of matter |
| 13286 | 4/25/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.2 | $ 99.00 | Speak to client re status of case |
| 13313 | 4/30/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.333 | $ 164.84 | Review time worked documents relating to time worked by client. Discuss next steps |
| 14385 | 4/30/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.2 | $ 92.00 | Attempted phone call (left voicemail message) followed by email to opposing counsel to clarify that it is hours worked, not payroll data, that is required in Excel-compatible format |
| 14386 | 4/30/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.1 | $ 46.00 | Telephone conference with MBK re clarifying for opposing counsel what data is required in Excel-compatible format |
| 13376 | 5/4/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.75 | $ 371.25 | Review docs for damages issues. Provide instructions to paralegal |
| 13384 | 5/7/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 0.25 | $ 33.75 | Sort, unzip files received |
| 13385 | 5/7/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 1.25 | $ 168.75 | Input data into Excel; Calculations - pay period overtime vs. actual pay, review of calculations; OCR paystubs |
| 13421 | 5/13/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.233 | $ 115.34 | Review calculations by paralegal |
| 13431 | 5/14/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 1.75 | $ 236.25 | Add additional weeks to calculations |
| 13432 | 5/14/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 0.75 | $ 101.25 | Call with M Kaplan, finish adding additional weeks to calculations |
| 13438 | 5/14/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.25 | $ 123.75 | Work with paralegal on damages calculations issues |
| 13447 | 5/16/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 2 | $ 270.00 | Recalculate without breaks, add 2018 time, comparisons, add additional paystub data to excel |
| 13448 | 5/16/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 0.25 | $ 33.75 | Call with M Kaplan re: Data |
| 13450 | 5/16/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.767 | $ 379.67 | Review damages calcs. Discuss damages with paralegal |

| Sort Number | Date | Category | Matter Name | Employee | Rate/Hr | Hours | Fees Earned | Notes |
|---|---|---|---|---|---|---|---|---|
| 13459 | 5/17/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 0.75 | $ 101.25 | Calculate variations, including salary rate and ot premium, remove breaks >30 minutes |
| 13460 | 5/17/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 0.25 | $ 33.75 | Create graphs to show salary fluctuations |
| 13461 | 5/17/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 0.25 | $ 33.75 | Call with M Kaplan re: Data |
| 13462 | 5/17/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 2 | $ 270.00 | Add all days on timesheet, convert timesheet to useable format, update calculations, add payroll info for all days |
| 13467 | 5/17/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.483 | $ 239.09 | Review damages info. Discuss with paralegal |
| 13472 | 5/17/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.133 | $ 65.84 | Speak with client |
| 13481 | 5/19/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 0.5 | $ 67.50 | Finish inputting remaining time |
| 13484 | 5/19/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.1 | $ 49.50 | Review calculations of damages |
| 14387 | 5/20/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.1 | $ 46.00 | Telephone conference with employer's counsel re missing pay info |
| 13529 | 5/23/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.133 | $ 65.84 | Speak with client |
| 13551 | 5/28/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.15 | $ 74.25 | Review additional documents from defendant; forward to paralegal with instructions |
| 13582 | 5/30/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.083 | $ 41.09 | Address deficiency in defendant provided information |
| 13588 | 5/30/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.117 | $ 57.92 | Discuss needs for additional docs from defendants with Lenore Garon |
| 13604 | 5/30/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 0.5 | $ 67.50 | Review additional docs received, email M Kaplan with missing info, enter partial info |
| 14388 | 5/30/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.2 | $ 92.00 | Telephone conference with counsel for employer followed by telephone conference with MBK re needed records that are missing, followed by email to counsel for employer |

| Sort Number | Date | Category | Matter Name | Employee | Rate/Hr | Hours | Fees Earned | Notes |
|---|---|---|---|---|---|---|---|---|
| 13689 | 6/12/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 1 | $ 135.00 | New calculations using new information, organize new files, enter on excel sheet, recalculate |
| 13693 | 6/13/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.6 | $ 297.00 | Review damages calculations. Discuss with paralegal. |
| 13696 | 6/13/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.15 | $ 74.25 | Review calculations |
| 13697 | 6/13/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.533 | $ 263.84 | Review settlement calculations for accuracy; discussed calculations and settlement strategy with Lenore Garon |
| 13698 | 6/13/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.2 | $ 99.00 | Discuss settlement issues with client; record notes of conversation |
| 13699 | 6/13/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 0.5 | $ 67.50 | Finish calculations, re-check work, notes to MK via email |
| 13700 | 6/13/2019 | Paralegal T | Honey Pig | Jfrary | $ 135.00 | 0.25 | $ 33.75 | Call with MK to discuss data, revisions to data |
| 14389 | 6/13/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.4 | $ 184.00 | Telephone conference with MBK re results of analysis of time clock records vs. pay stubs, and appropriate approach to employer's counsel |
| 13722 | 6/17/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 1.567 | $ 775.67 | Draft letter to opposing counsel on the settlement issues and our damages calculations |
| 13723 | 6/18/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.383 | $ 189.59 | Finalize letter. Review detailed calculations |
| 13727 | 6/18/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.117 | $ 57.92 | Draft settlement letter |
| 14390 | 6/18/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.4 | $ 184.00 | Review of settlement letter to Honey Pig's counsel and email to MBK with suggestions |
| 14391 | 6/19/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.1 | $ 46.00 | Review of email response of Honey Pig's counsel to our letter, and forward to MBK with query about further tolling. |
| 13735 | 6/20/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.317 | $ 156.92 | Review response from opposing counsel and consider response |
| 13740 | 6/20/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.1 | $ 49.50 | Discuss settlement issues with Lenore |

| Sort Number | Date | Category | Matter Name | Employee | Rate/Hr | Hours | Fees Earned | Notes |
|---|---|---|---|---|---|---|---|---|
| 14392 | 6/20/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.1 | $ 46.00 | Telephone conference with MBK re Honey Pig counsel's request for extension |
| 14393 | 6/20/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.1 | $ 46.00 | Response to Honey Pig counsel for his request for 2-3 weeks to respond to our settlement letter |
| 13815 | 7/1/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.1 | $ 49.50 | Review Status of Matter, discuss next steps with L Garon |
| 14394 | 7/1/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.2 | $ 92.00 | Telephone conference with MBK re drafting and filing Complaint |
| 13859 | 7/5/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.283 | $ 140.09 | Review status of the matter; discuss status of case and retention by Honey pig of new attorney with client |
| 14395 | 7/5/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.1 | $ 46.00 | Telephone conferences with house counsel and then new retained counsel, and email to MBK |
| 13901 | 7/22/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.517 | $ 255.92 | Speak to opposing counsel. Review damages calculations. |
| 13909 | 7/22/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.233 | $ 115.34 | Research regarding new opposing counsel |
| 14396 | 7/22/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.1 | $ 46.00 | Telephone conference with Honey Pig counsel, who asserts calculations are wrong; referred him to MBK |
| 13915 | 7/23/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.1 | $ 49.50 | Address damages calculation issue |
| 13916 | 7/23/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.7 | $ 346.50 | Draft letter and calculate revised demand |
| 13919 | 7/23/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.1 | $ 49.50 | Review status of matter |
| 13921 | 7/23/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.433 | $ 214.34 | Review settlement proposal |
| 13923 | 7/23/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.067 | $ 33.17 | Review status of matter |
| 13943 | 7/25/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.25 | $ 123.75 | Communicate with opposing counsel |
| 13946 | 7/25/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.133 | $ 65.84 | Email opposing counsel re attempt to directly contact client |
| 13971 | 7/29/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.117 | $ 57.92 | Speak to client |
| 13975 | 7/29/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.067 | $ 33.17 | Discuss next steps with Lenore Garon |

| Sort Number | Date | Category | Matter Name | Employee | Rate/Hr | Hours | Fees Earned | Notes |
|---|---|---|---|---|---|---|---|---|
| 14397 | 7/29/2019 | Time | Honey Pig | LGaron | $ 460.00 | 0.1 | $ 46.00 | Telephone conference with MBK re rejection of our settlement offer and need to draft complaint |
| 14028 | 8/2/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.067 | $ 33.17 | Speak to client |
| 14398 | 8/24/2019 | Time | Honey Pig | LGaron | $ 460.00 | 1.25 | $ 575.00 | Drafting Complaint |
| 14167 | 8/27/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 2.7 | $ 1,336.50 | Review modify and file draft complaint; related research regarding potential claims including potential claim for filing false information with IRS which I decided not to make; related communication and telephone conversation with client |
| 14168 | 8/28/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.55 | $ 272.25 | Address service issues. Related communication with opposing counsel |
| 14175 | 8/28/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.117 | $ 57.92 | Address waiver of service issues |
| 14179 | 8/29/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.317 | $ 156.92 | Address service issues. Conversation with Chap Peterson, counsel for Defendants. |
| 14218 | 9/5/2019 | Time | Honey Pig | MBKaplan | $ 495.00 | 0.1 | $ 49.50 | Communicate with client re case |
| | 10/1/2019 | time | Honey Pig | MBKaplan | $ 495.00 | 0.4 | $ 198.00 | Review defendants offer of judgment and consider response |

## Honey Pig Matter
## Plaintiff's Expenses

| Total Expenses | $ 400.00 |
|---|---|

| Date | Description | Amount | |
|---|---|---|---|
| 8/28/2019 | filing fee | $ | 400.00 |

**EXHIBIT 2**

**Resume of Matthew B. Kaplan**

# Matthew B. Kaplan

The Kaplan Law Firm, 1100 N Glebe Rd., Suite 1010, Arlington, VA 22201
Phone: (703) 665-9529   email: mbkaplan@thekaplanlawfirm.com   website:thekaplanlawfirm.com

## LEGAL EXPERIENCE

### The Kaplan Law Firm

**Principal Attorney, Arlington, Virginia**              **2012-present**

- Principal attorney at law firm that represents individuals and businesses in complex civil litigation and in civil and criminal appeals.
- As Member of the Criminal Justice Act Panels of the District of Columbia Circuit Court of Appeals, the Fourth Circuit Court of Appeals and the District of Columbia Court of Appeals, regularly appointed by those courts to represent indigent defendants appealing felony convictions.
- Obtained reversal of client's conviction in *Mason v. United States*, 170 A.3d 182 (D.C. 2017), which held, as issue of first impression, that a juror cannot be disqualified merely because she believes that the criminal justice system treats African-American males unfairly.
- Obtained reversal of client's conviction in *Malloy v. United States*, 186 A.3d 802 (D.C. 2018); case clarified law regarding "plain error" standard of review.
- Successfully prosecuted numerous collective actions and individual claims brought under wage payment, minimum wage and overtime legislation in state and federal courts in Maryland, Virginia and the District of Columbia; obtained substantial settlements for clients.
- Successfully represented major area non-profit in D.C. Superior Court in litigation to collect on defaulted low interest debt.

### Cohen Milstein Sellers & Toll PLLC

**Associate, Securities Practice Group, Washington, DC**              **2005–2012**

- Successfully litigated class action securities cases on behalf of clients of prominent plaintiffs' law firm with nationwide practice.
- Member of team prosecuting groundbreaking federal securities cases arising from collapse in value of mortgage backed securities.
- Principal attorney responsible for prosecution of *In re LDK Solar Securities Litigation*, which resulted in publicly traded corporation paying $16 million settlement after more than three years of litigation; developed novel legal argument that allowed service on Chinese Defendants; presented oral arguments; drafted nearly all briefs and other filings; supervised testifying experts; deposed eight fact and expert witnesses in Hong Kong and Hawaii.
- Litigated claims against corporations who wrongfully backdated stock options; recovered approximately $10 million from Staples, Inc. insiders.
- Associate responsible for *In re Buca Inc. Securities Litigation*, which recovered $1.6 million for investors.
- Litigated other securities cases, including *Moomjy v. HQ Sustainable Maritime Industries, Inc.*, *In re Dura Pharmaceuticals Securities Litigation*, *In re ProQuest Securities Litigation*, *In re JDS Uniphase Corporation Securities Litigation*, *In re Sirius Satellite Radio Securities Litigation*, *Tripp v. IndyMac Bancorp., Inc.*, and *In re C.P. Ships Securities Litigation*.
- Represented four detainees at Guantanamo Bay Naval Base in district court and the Court of Appeals; one client was released after extensive litigation.

# Matthew B. Kaplan

### White & Case, LLP
**Associate, Litigation Section, Washington, DC**  2003–2005
- Represented clients in high stakes civil and white-collar criminal cases.
- Managed large-scale document review in support of defense of major client in multidistrict antitrust litigation.
- Litigated *pro bono* Fair Labor Standards Act lawsuit, recovering $52,000.

### Office of the Federal Public Defender
**Volunteer Intern, Alexandria, Virginia**  September 2002-December 2003
- Researched legal theory adopted by the Fourth Circuit in dismissing felony case.

## OTHER EXPERIENCE

### U.S. Department of State
**Foreign Service Officer**  1988–2003
- Promoted interests of the United States and reported on developments abroad. Served as Political Officer, Desk Officer and Intelligence Analyst in Colombia, Venezuela, Nicaragua and Washington, DC; managed multimillion-dollar counternarcotics program in The Bahamas. Worked with the Department of Justice on extradition, foreign judicial reform and other issues.

### Central Intelligence Agency
**Intelligence Analyst**  1987–1988
- Regularly drafted President's Daily Brief and National Intelligence Daily articles; received Meritorious Honor Award.

## BAR ADMISSIONS
- State: District of Columbia, Maryland, Virginia
- Federal: Supreme Court; Courts of Appeals for the Fourth, Fifth, Ninth and District of Columbia Circuits; District Courts for the for the District of Columbia, District of Maryland and the Eastern and Western Districts of Virginia; Bankruptcy Court for the Eastern District of Virginia

## EDUCATION
**George Washington University Law School**  August 1999–January 2003
- J.D. With Highest Honors (top 3% of class).
- Member: George Washington Law Review; Moot Court Board; Order of the Coif.
- Awards: highest Evening Division GPA; most outstanding tort law student.

**Georgetown University, School of Foreign Service**  August 1982–May 1986
- B. S. in Foreign Affairs *cum laude*, specializing in Latin American Studies.

## LANGUAGES
- Spanish: Fluent.