IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ESVIN GOMEZ., <br><br> Plaintiff, <br><br> v. <br><br> SEOUL GOOL DAE GEE INC, <br><br> Defendant. | Case No. 1:19-cv-01121-CMH-TCB |

**REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

Defendant argues that Plaintiff's attorneys' fees claim should be substantially reduced. This is so, it says, because this was a simple case resolved in a matter of days, and because counsel obtained a poor recovery on Plaintiff's behalf. Defendant also complains about purported deficiencies in Plaintiff's counsel's time records.

Defendant's argument relies on a highly misleading portrayal of this case. This matter took some six months to resolve and involved significant informal discovery and difficult legal and factual issues. Moreover, the sole basis for Defendant's assertion that Plaintiff's recovery was poor is that Plaintiff obtained less than his initial confidential settlement proposal. This argument is foreclosed by Federal Rules of Evidence 408, which prohibit use of settlement proposals to determine the value of a claim. And, even if that were not the case, the argument is unpersuasive—as any experienced litigator knows a party's opening negotiating position is seldom a reasonable approximation of what that party expects to recover. Moreover, in this particular case Plaintiff's priority was not to maximize his monetary recovery, but to obtain a

recovery as quickly as possible so that he could follow through on his plans to permanently leave this country before the end of this year.

Defendant's quibbles about Plaintiff's counsel's time records are meritless. Additionally, in applying the factors set out in *Barber v. Kimbrell's, Inc.*, 577 F. 2d 216 (4th Cir. 1978), the Court can consider the fact that the attractiveness of representing plaintiffs in cases of this type is reduced because of the possibility—realized in this case—that counsel will have to devote substantial uncompensated attorney time litigating a fee award.

### I.     PLAINTIFF'S LODESTAR IS PRESUMPTIVELY REASONABLE

Plaintiff's lodestar for this case establishes Plaintiff's counsel's "presumptively reasonable" fee. *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 989 (4th Cir. 1992). Plaintiff agrees that, if the attorney time devoted to this case was unreasonably excessive or if Plaintiff's counsel obtained a recovery markedly less than what was reasonable, this Court may reduce the lodestar amount. But that is not the case here.

### II.    THIS WAS NOT A QUICK AND SIMPLE CASE

Though small in monetary terms by the standards of federal litigation, this case was not simple.

This case was effectively pending for six months—from April 2, 2019, when counsel advised Defendant of Plaintiff's potential claim, through Plaintiff's October 3 acceptance of the offer of judgment. Accompanying Additional Declaration of Matthew B. Kaplan ¶ 2. Although no formal case was pending before this Court for most of that period, Plaintiff's counsel should be commended, not punished, for their good faith effort to reach a pre-litigation settlement which, had it succeeded, would have minimized the need to devote attorney time and judicial resources to this matter.

Moreover, while Defendant is correct that there was no "formal discovery" in this case, there was significant informal discovery, with Defendant producing some 240 pages of "paper" records plus voluminous Excel spreadsheet formatted data. *Id.* ¶ 3. Obtaining these documents from Defendant was not a simple or straightforward process, with considerable interaction between the attorneys for the two sides required to obtain the necessary information. *Id.*

Nor was this case simple from a legal or factual perspective. Defendant initially produced paystubs, containing both time-worked and compensation paid information, which indicated that Plaintiff had worked substantial overtime. But Plaintiff's counsel's analysis of the numbers provided in those paystubs indicated that Plaintiff had been substantially *overpaid* for this overtime work. Additional Kaplan Decl. ¶ 4. Many FLSA plaintiff's attorneys would not have further pursued this matter. *Id.* Counsel in this case, however, demanded (on threat of filing a lawsuit and invoking compulsory discovery procedures) that Defendant produce complete records from its timekeeping system. *Id.* An analysis of these records indicated that the time system records did not match the information on the paystubs. *Id.* This discrepancy may reflect an intentional effort by Defendant to conceal its violations of the FLSA, which are apparently systematic. Defendant, of course, would likely have argued that it reflected only poor recordkeeping.

It is not settled under the FLSA how damages should be calculated in the unusual situation present here: the defendant made overtime payments, but those payments do not correspond to the actual overtime hours worked. Plaintiff's counsel took the view in this case that Plaintiff's weekly compensation should be deemed a salary and be divided by actual hours worked (as reported by the timekeeping system) to obtain a "regular rate" and that all overtime hours should then be paid at 1.5 times that rate. This was the methodology counsel used for

Plaintiff's damages calculations. But these calculations were vulnerable to attack by Defendant on both factual and legal grounds. Defendant could, for example, have argued that the time keeping system was not accurate—in at least one case it clearly was not, as it incorrectly showed Plaintiff working a shift of more than 24 hours. Additional Kaplan Decl. ¶ 5. Defendant could also have argued that Plaintiff's damages methodology was improper because it did not give it credit for payments made that had purportedly been made as overtime payments. While Plaintiff disagrees with these potential arguments, they might have prevailed.

### III. PLAINTIFF WAS SUCCESSFUL ON HIS CLAIMS

As an initial matter, Defendant's reliance on Plaintiff's proposals during confidential settlement negotiations to supposedly show that this was a poor settlement for Plaintiff is improper. Federal Rule of Evidence 408(a) provides that statements in settlement communications may not be used "either to prove or disprove the validity or amount of a disputed claim." But Defendant would have the Court do exactly that—they use the settlement proposal to value this case and then say that, because Plaintiff received significantly less than that value, he received much less than what this case was worth.

The purpose of Rule 408 "is promotion of the public policy favoring the compromise and settlement of disputes" by permitting "freedom of communication with respect to compromise." Fed. R. Evid. 408 advisory committee's note. The resolution of legal claims would be much more difficult if a party seeking to settle a claim knew that its statements about the value of its claim could be used against it in court. In few if any instances will FLSA cases settle for the amount of a Plaintiff's initial proposal. Indeed, if such opening proposals are, as Defendant asserts, admissible to prove the value of a case, a defendant could almost always claim that the Plaintiff had limited success. The likely result would be that few settlement proposals would be

made. Moreover, plaintiffs' attorneys in such cases would have a perverse incentive—inconsistent with the interests of their clients—to make lowball settlement offers.

And, even if Defendant's position was not foreclosed by Rule 408, a party's settlement position cannot be deemed to be a reasonable proxy for the value of that case. *See* Va. Rules of Prof'l Conduct R. 4.1 cmt. 2. ("Under generally accepted conventions in negotiation, certain types of statements ordinarily are not taken as statements of material fact. Estimates of price or value placed on the subject of a transaction and a party's intentions as to an acceptable settlement of a claim are in this category.").

Defendant cites *Nelson v. Cowles Ford Inc.*, 77 Fed. Appx. 637, 644 (4th Cir. 2003) and *E.E.O.C. v. Nutri/System, Inc.*, 685 F. Supp. 568 (E.D. Va. 1988), for the proposition that a court "may consider settlement offers" in determining reasonable fees. But those cases stand for the reasonable view that a court can look to a plaintiff's settlement proposals, not to determine the value of a case, but to determine whether the plaintiff's attorney sought to unfairly inflate his fees by unreasonably insisting on protracted litigation of a matter when doing so produced little benefit for his client. *See Nelson*, 77 Fed. Appx. at 644 (district court appropriately reduced fees because plaintiff lost on most of his claims and ultimately only "received damages equal to the amount of a pretrial settlement offer by [the defendant]"); *Nutri/System*, 685 F. Supp. at 577 ("attorney, by pressing questionable claims and refusing to settle except on outrageous terms," should not be allowed to "force a defendant to incur substantial fees which he later uses as a basis for his own fee claim," but such conduct did not occur in that case). Plaintiff's counsel here did not unduly prolong this litigation. Indeed, because his client was going to leave the country, they had a strong incentive to resolve this case as quickly as practicable.

Plaintiff has set forth facts supporting his view that $6,500 was a reasonable valuation for this case, assuming that it would be litigated to trial. Although Plaintiff's damages calculations—provided during settlement discussions—suggested that more might be obtained, the methodology of these calculations could be challenged as could the accuracy of the underlying data. Defendant's consistent position was that Plaintiff was paid for all of his overtime work and Plaintiff's paystubs purported to support that assertion. Furthermore, the fact that Plaintiff's paystubs indicated that overtime was paid would substantially support an argument by Defendant that any FLSA violations were in good faith and that, consequently, liquidated damages should not be awarded. Defendant does not dispute the accuracy of any of these points—and does not retract its position that Plaintiff would have recovered nothing at trial.

Some additional points regarding Defendant's argument are relevant. Defendant repeatedly emphasizes that Plaintiff's initial confidential settlement letter proposed settling this case for $53,257.95. This is extraordinarily misleading. This demand was based on an error in Plaintiff's initial calculations caused by an erroneous Microsoft Excel formula. Additional Kaplan Decl. ¶ 10. This error was apparent to Defendant because Plaintiff provided it with those calculations. *Id.* When Defendant pointed out this error, Plaintiff immediately retracted the offer. *Id.* There was no substantive discussion of settlement based on this offer and, based on the correct damages calculations, Plaintiff made a revised settlement offer of $16,265.90. *Id.*; Hwang Decl. Ex. B.

Defendant also repeatedly emphasizes that this revised offer was presented as a final offer, with Plaintiff's counsel indicating that he would not negotiate further prior to filing a lawsuit. Presumably Defendant means to suggest that Plaintiff was intransigent in his

6

negotiating position. But this proposal was in that form was because Defendant's counsel urged Plaintiff's counsel to make a best and final offer that he could convey to his client, apparently because Defendant's counsel believed that such an offer was more likely to lead to the resolution of this case than a conventional negotiable proposal. Additional Kaplan Decl. ¶ 6. Plaintiff's counsel would not have otherwise made this offer in this form as he generally does not find making such offers to be productive. *Id.* Defendant cannot now properly argue that such a settlement demand was inappropriate when it was Defendant's attorney who requested an offer in that format. Moreover, Plaintiff's counsel reasonably expected that, if that prelitigation offer was not accepted, additional settlement discussions (or an offer of judgment) were likely after a lawsuit was filed. *Id.*

A further factor supporting the reasonableness of the amount of the Judgment against Defendant is that Plaintiff planned to soon leave the country and, for that reason, strongly preferred to avoid prolonged litigation and a trial. Defendant says that this is irrelevant. This is not so—Plaintiff's counsel's responsibility was not to extract every possible cent of damages from Defendant, but to obtain the result that best achieved his client's objectives. *See* Va. Rules of Prof'l Conduct R. 1.2 cmt. 1 ("The client has ultimate authority to determine the purposes to be served by legal representation."). Here, because of counsel's success on his behalf, Plaintiff is now able to return to his family in his home country with $6,500 in his pocket, an amount substantially greater than the annual per capita income of that country's citizens. From his perspective, this case was a marked success.

### IV. DEFENDANT'S FURTHER QUIBBLES ARE MERITLESS

Defendant makes several complaints about Plaintiff's counsel's time entries.

Defendant complains that counsel devoted too much time to work relating to a detailed, single spaced three page letter which fully laid out the basis for Plaintiff's claims and proposed a settlement. Accompanying the letter (but not included with the copy provided to the court by Defendant) is a supporting 78-page spreadsheet. Additional Kaplan Decl. ¶ 9. It was appropriate to devote less than 2.5 hours of attorney time to these important documents.

Defendant also complains that Plaintiff engaged in impermissible block billing, combining unrelated tasks into a single time entry. But an examination of the time entries cited (but not quoted) by Defendant indicates that this is not so. For example, Defendant asserts that the entry identified by sort number 13175, which totals twelve minutes and which reads "Speak to client. Record notes of conversation" is block billing. It is not—Plaintiff's counsel was not required to separately record how much time he spent speaking to his client and then how much additional time he spent finalizing his notes of that conversation, especially since the entire event took less than a quarter-hour.[1]

Defendant also misleadingly quotes a snippet of a lengthy time entry, no. 14167, relating to the drafting of the Complaint, to suggest that the entire entry relates to a claim that was not included in the complaint. The entire entry reads as follows: "Review modify and file draft complaint; related research regarding potential claims including potential claim for filing false information with IRS which I decided not to make; related communication and telephone conversation with client." It was appropriate—indeed it was an obligation of competent counsel—to at least consider whether claims other than FLSA violations should be included in the Complaint. The time devoted to consideration of these alternative claims was minimal in the

---

[1] Another example: Defendant says that entry 13088, which reads "Initial meeting with client record notes of conversation" is a block entry. It is not.

context of preparing the complaint.[2] The assertion that this entire time entry must be voided is unsupportable.

## V. POTENTIAL UNCOMPENSATED FEE LITIGATION MAKES THESE CASES LESS ATTRACTIVE

One of the *Kimbell* factors that this Court is to analyze when deciding a fee request is "the undesirability of the case within the legal community." *Wells Fargo Bank, N.A. v. Walls*, No. 1:12-cv-664, 2013 U.S. Dist. LEXIS 57415, *5-7 (E.D. Va. Mar. 4, 2013). As Plaintiff noted in his opening memorandum, a factor making matters such as this one less attractive than would otherwise be the case is that experienced counsel know that they may end, as this case did, with a plaintiff accepting an offer of judgment which prevents plaintiff's counsel from being compensated for what may be—as has turned out to be the case here—relatively extensive litigation over fees.

In this case counsel for Defendant warned Plaintiff's counsel that his client would vigorously litigate fees if counsel did not accept what, in Plaintiff's counsel's view, was a very lowball offer to resolve counsel's fee claim. Additional Kaplan Decl. ¶ 8. Plaintiff's counsel did not accept that offer and Defendant has vigorously litigated fees. Consequently, counsel have expended considerable uncompensated attorney time in preparing their initial filing on fees and this Reply. Defendant is, of course, fully entitled to litigate fees. But, under the *Kimbrell* factors, in making its fees determination, this Court can take into account the reality that it is known that, in these type of cases, what happened here—extensive uncompensated work by

---

[2] In any event, research relating to a possible claim arising from Defendant's failure to withhold employer-side taxes constituted only a small portion of the time set out in this time entry, likely no more than fifteen minutes. Additional Kaplan Decl. ¶ 7.

Plaintiff's counsel on fees issue—might happen, and that this reduces the attractiveness of such cases within the legal community.

## VI. REQUESTED COSTS SHOULD BE AWARDED

Defendant does not dispute that Plaintiff should be awarded his costs, which consists of only of the filing fee in this case.

## VII. CONCLUSION

The Court should award the requested fees and costs.

Dated: November 27, 2019

                              Respectfully submitted,

                              By     /s/Matthew B. Kaplan
                              Matthew B. Kaplan
                              VSB No. 51027
                              The Kaplan Law Firm
                              509 N. Jefferson St.
                              Arlington, VA 22205
                              Telephone: (703) 665-9529
                              Fax: (888) 958-1366
                              Email: mbkaplan@thekaplanlawfirm.com
                              *Counsel for Plaintiffs*

                              Lenore C. Garon
                              VSB No. 39934
                              Law Office of Lenore C. Garon, PLLC
                              2412 Falls Place Court
                              Falls Church, VA 22043
                              Telephone: (703) 534-6662
                              Email: lenore@lenorecgaron.com
                              *Counsel for Plaintiffs*

**Certificate of Service**

      I hereby certify that, on the date indicated below, the foregoing document (and any attachments or accompanying documents) was served via the Court's CM/ECF System on counsel for all parties who have appeared in this matter.

                                                   /s/ Matthew B. Kaplan
                                                  Matthew B. Kaplan

                                                  Dated: November 27, 2019